May it please the Court, I'm Robert Joven. I'm appearing today on behalf of the petitioner, Sukhdev Singh Sembi. At a minimum, this case needs to be remanded for reconsideration of the IJ's adverse credibility finding. The IJ's explanation of that credibility finding begins on page 174 of the administrative record, where the immigration judge, this is down Mr. Singh's testimony is inconsistent with the information set forth in the State Department reports that he himself had put into the record. Now, this part of the IJ's decision is problematic for two reasons. First, the IJ nowhere explains, in particular, how Mr. Singh's testimony is inconsistent with these State Department reports. But more importantly, the immigration judge is relying on a document, the country profile, that's not in this administrative record. If you look at page 226 of the administrative record, the immigration judge says, and this is down at the bottom, I'm going to place in the record Exhibit 4 of the State Department report, that's in the record, and Exhibit 5 will be the profile of asylum claims. But we don't have the profile of asylum claims in this record. What we have is merely an 28-page document, excluding the maps that accompany it. The profile, the addendum, is a three-page addendum. All we have is the three-page addendum. Now, we submitted the profile to the court. It was attached to our opening brief, but we have no idea whether the Board even had that document when it considered its appeal. So for that reason, it seems to me the case should go back, at a minimum, for the Board to consider the evidence that the IJ says he was putting in the record, but it's not there. Now, I don't think it's a mistake here. I don't think the immigration judge just submitted the addendum, because if you look at all the other exhibits, they're all marked with an exhibit stamp. The addendum is not. We're missing some 28 pages of the record here. And this is important. It's prejudicial here, because, for example, the IJ suggested that Mr. Sembe is not telling the truth. He could not have been targeted, because he comes from a predominantly Sikh area, and the IJ says that the police, you know, aside from the fact that Mr. Sembe said the police are predominantly Sikh. But if the profile had been in the record, this would not have been an issue, because the profile makes clear, and this is in the profile at page 10, paragraph 45, that there is rampant violence in Punjab. And the profile makes clear that most of that violence has been perpetrated by Sikhs against Sikhs. For example, in paragraph 45, the profile says the chief minister of Punjab is a Sikh. The vast majority of the police in that state are Sikhs. The much feared director general of the Punjab police, KPS Gill, also a Sikh, retired early in 1996. Many believe that he was responsible for the human rights abuses committed by the Punjabi law enforcement agencies. The judge was saying it's not plausible that Sikhs would be committing violence against Sikhs, but the country profile, which he supposedly admitted into the record, refutes that. The IJ also suggested that Mr. Sembe's account of his father's death, his belief that his father had been killed by the police, he said that wasn't plausible, because the police themselves had said that he was killed in an accident. Well, if the profile had been in the record, the judge would have come to a different conclusion, because if you look at paragraph 22 of the profile, that makes clear that many hundreds of people have been killed by the police in what they call fake encounters. The police killed these individuals and they murdered them, according to the State Department, and they framed these as accidents or encounters. So it seems to me, at a minimum, this case has to go back to the board, because it's not at all clear that the board had the country profile. But in addition, there are other reasons that this case should be sent back or reversed. The IJ, in his opinion, he insinuated that Mr. Sembe was not a practicing Sikh, because while he was in custody, he had no turban, he wore no turban, and he didn't wear a lengthy beard. But in doing so, the immigration judge completely ignored the voter ID card and the driving license that Mr. Sembe submitted, the authenticity of which was never challenged. And if you look at those documents, they both show Mr. Sembe wearing a turban and a lengthy beard. That is clear evidence that he was a practicing Sikh while he was in India. Now, the IJ suggested that the passport Mr. Sembe used to leave India, quote, depicted him wearing a turban. But the simple fact is, we have no idea what that passport reflected. Mr. Sembe simply testified that the agent asked him for photographs. He provided the photographs that he had. Those photographs, it's true, reflected him wearing a turban, because that was his practice in India. But he goes on to say he never saw the passport. The first time he met the agent was at the airport. He testified that the only time he saw the passport was from a distance, because the agent had that in his hand. And this is on pages 286 and 284 of the record. It's simply not true. It's not at all clear from the record that the passport showed him wearing a turban. The IJ made other mistakes that require remand. He said that Mr. Sembe was inconsistent about whether he even belonged to a Kali Dalman. That's not true. He testified, and this is on page 242 of the administrative record, he never claimed to be a member. He said he was a supporter. The judge didn't understand that distinction. The IJ suggested that Mr. Sembe had not mentioned the store that he owned until cross-examination. Again, this is just false. The store is mentioned not only in his direct examination, it's mentioned in his written asylum application. This is on page 504 of the administrative record. He says in the application, on March 25th, 2003, when I was going from my shop at 7.30 a.m. to 6.30 p.m., the shop was mentioned in the application. As we point out in our opening brief, the same thing is true on direct. Now, the government seems to suggest that he can't be telling the truth about the shop because the government says he graduated from high school in 1999, and they say on page 241 of the record, he said, when he was asked, what did you do after you finished school, he said, I worked on a farm. But if you look at what the government cites here, and this is, I believe, on page 345 of the administrative record, the government is pointing to page 345 for evidence that he graduated from high school in 1999, and they're combining that with his statement that after he graduated, he worked on the farm to suggest that there's an inconsistency here. But if you look at page 345 of the administrative record, it doesn't say he graduated in 1999. It says he graduated in 1994. There are two documents here. There's a tenth grade certificate, and then there's a plus two certificate, because what he did is he finished tenth grade, and then he got a plus two certificate. That's two more years of schooling. His tenth grade education was completed in 1991. That's on page 344 of the record. His plus two was completed in 1994, not 1999. The government is simply misreading the record. The judge suggested that he'd been inconsistent with regard to the number of arrests. The application doesn't explain how many times he was arrested, but what it says is, quote, I accompanied my grandfather to meetings many times, and we were arrested many times. Police tortured my grandfather seven or eight times, and I was tortured four times. The judge construed that as meaning he was only arrested four times. Mr. Semme testified, no, I was actually arrested five times, but four of those times I was brutally tortured. This is set forth on page 287 of the record. There's no inconsistency here. He was arrested five times, but consistent with his application, he said, I was arrested and tortured four times. That's absolutely correct. The judge faulted Mr. Semme because his attorney, who, frankly, was incompetent, and as this court is well aware, has been disbarred from practicing before this court, has been disbarred from practicing before EIR, submitted three different affidavits from his grandfather. Those affidavits are entirely inconsistent. They're entirely consistent. There's not a single inconsistency between them. The immigration judge wanted Mr. Semme to explain why three affidavits that are entirely consistent would have been submitted. He doesn't know. He had no role in gathering these documents. He had no role in reviewing them. It was his attorney who gathered them, and his attorney makes that clear on page 314 of the record, where he takes complete responsibility, and he says that Mr. Semme had no role at all in gathering these corroborating evidence. So, of course, it's erroneous for the judge to fault him for failing to explain why his attorney presented these various documents. The only evidence in this record that could possibly be construed as inconsistent is the doctor's letter, and this is on page 346 of the record. The content of that letter we would submit is entirely consistent with his testimony. The only issue here is the date. At the top of the letter and at the bottom of the letter, the judge construed the date as March of 2003 rather than May of 2003, which Mr. Semme said, you know, he reads this thing as being issued in May. But the date is completely illegible. The immigration judge construed this as a 3. Mr. Semme construed it as a 5. Frankly, I think it's an 8. I don't know what it says. But it's not the — it's not sufficient grounds to find somebody lacking credibility and return somebody who claims to have been arrested and brutally tortured four times to the very country where he suffered that persecution. I'll reserve the balance of my time. Thank you. Good morning, Your Honors. The issue presented in this case, as in the last case, is whether the Petitioner — not whether you could believe the Petitioner, but whether the evidence compels affirmance of the immigration judge's adverse credibility finding. In this case, the immigration judge found the Petitioner's testimony was inherently improbable, internally inconsistent, inconsistent with his written asylum application, and contradicted by current country conditions. I'd like to address counsel's argument first by talking about the current country conditions on which the immigration judge based his adverse credibility finding, as well as any findings that the Petitioner would not suffer persecution upon return to India. Contrary to counsel's contention, the immigration judge did not overlook evidence or pertinent evidence of country conditions. While he may have left out the country profile for India, the evidence — I'm sorry, the record contains an almost 50-page document called the Country Report for 2002, and this document begins at Administrative Record, page 459. In this document, the State Department discusses in detail country conditions that existed at the time the immigration judge rendered his decision. The country conditions do not mention any mistreatment or persecution of Sikhs in this report. Furthermore, in the 2002 addendum that accompanies the State Department's report, which is found at page 494, that addendum really speaks to the credibility determination in this case. The addendum shows that country conditions in India have improved significantly since the early 1990s. Specifically, the addendum states that Sikhs in the Punjab province have not experienced persecution or mistreatment. They are able to vote, participate in government, hold offices, and — Which page are you reading from? 494? Yes, Your Honor, 494. Yes, 494. As I understand it, just — the record is a little bit confusing, but — so the — when you talk about the addendum, it's the addendum to the India Country Profile, July 1997, which is at 492. Is that right? That's correct, Your Honor. It was short. It was about three pages. That's correct. It begins on page 494 and ends with page 490 — I'm sorry, 492 and ends with page 494. Right. Right. And most significantly, that document states that police abuses in India are not condoned, and if the offenders are apprehended, they are prosecuted by the government. But this was back in 19 — the addendum is to the Country Profile Report of 1997, right? That's correct, Your Honor. When was the addendum prepared? I believe — well, it doesn't say specifically, but I believe it was prepared in 1997. It is dated July 1997, and there was a subsequent country report for 2002 that was published in March of 2003. So fairly closely in time to the immigration judge's decision. Is that country report that it's not — that's not contained in the record? Counsel is referring to some document that was not in the administrative record. I am not sure, Your Honor, to be honest, what counsel is referring to. He mentioned that there was a profile of some kind that was omitted from the record, and my perusal of the record doesn't show that the immigration judge had, in fact, omitted that profile. But even if he had, it was harmless error because there was more than sufficient evidence to support the immigration judge's adverse credibility finding. And significantly, we note that the petitioner himself was given an opportunity during his removal hearing — excuse me, deportation hearing — to produce information on country conditions that would show that he would likely suffer persecution upon his return to India. And the most recent information that he was able to provide was 1998 information. And the 2003 articles that he submitted, in fact, show no problems for Sikhs who are living in the Punjab province. Those articles only discuss problems between Hindus and Muslims, but they did not mention any problems experienced by Sikhs. And I'm referring to record page 181. I'd like to address counsel's argument, which is essentially a picking apart of the immigration judge's credibility finding. Counsel can provide a number of reasons as to why the immigration judge's decision should be reversed. And while it is possible that you could draw different conclusions based on this record than what the immigration judge drew, the standard of review requires that you affirm the immigration judge's adverse credibility finding if you find that it is based on substantial evidence in the record, and we submit that it is. I'd like to walk through some of the inconsistencies that the immigration judge found to show you how his decision was supported by substantial evidence. First, the immigration judge found that the petitioner's political activities on behalf of the Akeli Dalman party were rather limited. He was not a member of the party, and his political activities consisted of giving rides to people from his villages to various demonstrations on five or six occasions over the course of eight years. That does not demonstrate substantial activity of any kind. Furthermore, the immigration judge found that Sikhs in the Punjabi province are not targeted for persecution or mistreatment. And aside from the country condition reports that the immigration judge relied on, he also based that finding on the petitioner's own testimony. The petitioner said that 60% of Punjab is comprised of Sikhs, 90% of the people in his village are Sikhs, some police officers in his village were Sikhs, the Sikh party was able to halt rallies of all sizes, and the Sikhs were able to live freely in the Punjab province. And that statement is found at record page 245 and 283. In addition, the immigration judge found that the petitioner's non-adherence to Sikh practices severely undermined his credibility. He claimed that he had to cut his hair and maintain a shaved, and could not wear a beard in order to avoid detection by the police when he left India. And yet he left India with a passport that bore a picture of him wearing a turban. Furthermore, five months after his arrival in this country, he had his immigration hearing before the immigration judge. At that hearing, the judge observed that he looked well-groomed, he was not sporting a beard or wearing a turban, and his haircut was short. And when asked why he did not wear a turban, the petitioner replied, he did not or had not asked anyone, including his family members who were in the United States, to provide him with a turban. And finally, the immigration judge found that his physical injuries were not consistent with the medical documentation that he provided to show that he was, in fact, injured. For example, the medical certificate that he presented from the Dawaba Hospital was actually dated two months prior to the alleged treatment and the alleged injury. Now, petitioner's counsel will quibble with the immigration judge's finding, and he'll say that it could have been dated 2005 or 2003, depending on how you read that document. But the document itself shows that it was dated 2003, and the immigration judge was well within his right to look at the document and find that the date on it was dated March of 2003, which was two months preceding the alleged injury and treatment. In summary, the immigration judge's adverse credibility determination cannot be reversed unless the Court finds that the evidence and the record compels a reversal. Because the petitioner has clearly not met his burden of establishing asylum through credible testimony, the immigration judge's decision should be affirmed. If the Court has no further questions, we'd like to rest. Thank you. Obviously, we disagree with every point that the government's made in its presentation. I think this is one of the weakest credibility determinations I've ever seen. But I want to focus on the addendum and the country profile. I mean, the government says they have no idea what report I'm talking about. It's attached to our opening brief. It's a 28-page report called the country profile. And in every asylum claim, every asylum case, as a general matter, the government or the judge puts into the record the country reports and the country profile. And they're very different because the country profile specifically addresses the kinds of common claims that arise from that country, asylum claims. And in this case, on 226, the immigration judge said he was submitting this into the record. It's not there. The government knows it's not there. They're not unfamiliar with this report. It's attached to our opening brief. It's just not there. We have no idea whether the board had it either. And as I said earlier, it's clearly prejudicial because it helps us. The addendum helps the government. The rest of the report, the remaining 28 pages, help us. Thank you. The matter will be submitted. We appreciate your argument. The next case on the calendar was Searles v. Riley, but that's submitted on the briefs. And then our last case for argument is Potts v. Zettel.
judges: Canby, Cox , Paez